Number 191586 and number 191640, Project Veritas Action Fund v. Rachel Splane Rollins and number 191629, K. Eric Martin et al. v. Rachel Splane Rollins. Okay, you can start. Good morning, and may it please the Court, my name is Eric Haskell. I am an assistant attorney general for the Commonwealth of Massachusetts, and I represent a district attorney in these appeals. I'd like to begin by asking to reserve three minutes of my time for rebuttal. You may. Thank you, Your Honor. These appeals are not about recording. They're about one particular distinctive type of recording, that is, recording that's done in a surreptitious manner where the recording device is not out in the open for all to see and to know that they're being recorded. In 1968, when Massachusetts was enacting its anti-eavesdropping statute, the legislature made a policy choice to focus on just that kind of surreptitious recording and eavesdropping and really to place no restrictions on open eavesdropping and recording. Just for getting the terminology right so I understand how the statute works. Yes. Does the person recorded have to be aware of the recording in order for it to be open and not secret? The way that the state courts, the Massachusetts SJC, has interpreted the statute is that if the recording device is held out in plain view, it's deemed constructive knowledge. No matter how far away the person is? I don't think the state courts have tested every variation of that, but yes, that's the right line that they've drew between a recording device, intercepting device in the language of the statute that is in plain view versus not in plain view. Now, the statute, as I mentioned, has no concern with open recording. We have no quarrel about that at all. This court, a little less than 10 years ago in the Glick case, recognized a right to record or what's come to be known as a right to record and what the court held in Glick is that in certain public circumstances, there is a First Amendment right to openly record certain government officials. We have no quarrel with the holding of Glick as far as it goes, as far as I just described. But what the district court did here in this case is expanded the rule of Glick in two ways. First, it expanded it to include surreptitious recording, just the same as open recording, and that gets us into the conflict with the Massachusetts statute. The district court also interpreted Glick to cover far more government officials and far more public situations than this court appears to have held in Glick. The trouble with the district court's, one of the problems with the district court's declaration, though, is that we don't know exactly what situations, so we don't know exactly what government officials. The district court phrased... Is it possible to frame a decree that would contemplate and anticipate every possible permutation? I mean, it seems to me that what Chief Judge Saras did was attempt to outline the general parameters of a rule and recognized, as I read her opinion, that it would have to be tested case by case at the margins. Well, I agree, Your Honor, that's what the district court did. Yeah, but why isn't that a sensible way to approach this type of problem? You have a statute that the Massachusetts General Court enacted, which sweeps very broadly. The district court finds that in certain of its important applications, it is unconstitutionally overbroad, so it attempts to set out some general benchmarks and recognizes that at the margins there's going to have to be litigation to pin down the exact boundaries. And what I'm struggling with is your intimation that that's not a perfectly sensible approach to this type of problem. The trouble we have with that approach, Your Honor, is first the assumptions that the district court needs to engage in to reach that conclusion, the abstractions and the hypotheticals that the district court, or really any court, needs to indulge in to reach conclusion that broad. And then second, the indeterminates... Well, I can understand if you're challenging the district court's constitutional jurisprudence. I can understand that. But I don't know how you can expect a court, having resolved the constitutional questions the way it did, to be more exact or precise in its decree. That's what's puzzling me. Well, I think that, Your Honor, tracks back to our first argument about whether these cases are justiciable in the first place, whether the nature of the claims and the fit that they provide with the law around this right to record as it exists right now... Suppose the decree was limited just to traditional public fora. Would you think it was then right? Your Honor, I think that the question of the constitutionality of a surreptitious recording is going to depend on a constellation of circumstances. And so, without more definition around the public official being recorded... Police officers in traditional public fora doing public duties. Would that be right? Your Honor, I still don't think that's the level of concreteness that the law requires in order to find a justiciable controversy. The reason for that is that police officers do a lot of different things in public. Many of them are supposed to be and ought to be, and it's good for everybody for them to be broadcasted to the public view. There are some things that police officers do in public that are more of a private nature. Such as? The kind of hypotheticals that we commonly have in mind are, say, a meeting with a confidential informant A meeting with a confidential informant, if it's done in public, what's wrong with that being recorded? If the police officer wants that meeting to be truly confidential, the police officer can control where the meeting is held easy enough to hold it in private. Any police officer who meets in a public place with a confidential informant realizes that she's running certain risks of being observed or being overheard and the like. Well, as the law stands right now, Your Honor, the police certainly do understand that they're running some risks about being recorded in Massachusetts being recorded openly. And so the police, in that situation, under the law as it stands right now, are able to look around them and say, oh, there's people passing by, maybe we shouldn't have this conversation here. Well, after your decree, they'll know that they should be even more careful. Well, and I think, Your Honor, that raises the point that we make in our brief about the interests that are on both sides of this question. While there's no doubt a First Amendment right to learn about the government, to gather information about the government, anybody who's talking in public also has rights vis-à-vis what they say. They have the right not to speak. They have the right to make intelligent choices about what they choose to say and what they choose to do. Why don't we wait until there is a case that, in fact, raises exactly that issue, i.e., some bystander who says, you know, I'm not part of the police, I'm not part of the apparatus, and yet they've recorded me and they've recorded me, you know, we'll assume without my knowledge or reasonably imputed knowledge, and decide the case then. For the present time, that is not what is before us, and that is not what was before the district court. So leave the general rule where it is and wait for the case that you are describing. In our view, Your Honor, that is how the development of the law in this area ought to unfold, is in the context of appropriately concrete cases that can form appropriately tailored rules. But where there are interests on all sides of this question that vary depending on the circumstance, our view is that it's not amenable to the kind of broad brush indeterminate adjudication of the district court. In effect, you're saying a facial challenge cannot be brought in this context, and the issue is why not. In other words, if many, many applications can be identified which are not of the kind that would raise your concern, the recording is in a public place, it's during public duties, the recording doesn't pick up any private speech, or alternatively, the private speaker speaking extremely loudly or in a way in which they have no conceivable privacy expectation, one can imagine many, many, many circumstances where this statute would stand in the way of such recording, which is traditionally the type of thing that grounds a facial challenge, because there is so many potentially unconstitutional applications. You're saying because you can identify some constitutional applications, all of it must be done as applied, but that seems inconsistent with the whole idea that a facial challenge can be brought. Well, Your Honor, what's before this court is a particular claim, and I think it's against the particular claim that the justiciability of the case and the rule of law that the court passes down has to be measured against that claim. The claim here is not a traditional pure facial challenge, that is, a challenge to the terms of the statute on its face, nor, with the exception of Project Veritas' cross appeal, is it a First Amendment overbreadth challenge. Well, it's as much a facial challenge as Reed was a facial challenge. Well, and what Reed held, Your Honor, is that a case of that type is subject to analysis as a facial challenge to the extent that the claim reaches, and so our view is that what the plaintiffs have to do to sustain their claim here is to show, like the Supreme Court held in Reed and like this court held in Showtime Entertainment, that within the scope of their claim, the statute lacks a plainly legitimate sweep. Our argument, as we've argued in the brief, is that when you're looking at this whole big, wide universe of public officials in public places, there are many, many legitimate applications of this statute. One imagines it's not only the police officers that strive for it. But he contemplated just that kind of hybrid situation where there would be a mixture of constitutional and unconstitutional applications and said that you can proceed with what amounts to a facial challenge limited to the unconstitutional applications. And what Reed said, what it ultimately held, is that the plaintiffs in that situation had failed to show that the statute, in that case it was the Washington Public Records statute, lacked a plainly legitimate sweep within the scope of what they were seeking. It's a relative calculus. The plainly legitimate sweep? Yes. It's not that there are plainly legitimate applications. That's contemplated even in a facial challenge. The question is whether there's a substantial amount of unconstitutional applications. That's the whole reason why, because of the First Amendment interests involved, we don't require it to go case by case, right? Your Honor, I don't think that's the case relative to its plainly legitimate sweep. How do you understand the test? As long as there are a number of legitimate applications, it doesn't matter how many illegitimate ones there are? Our understanding is that there needs to be a plainly legitimate sweep, and I don't doubt that that's relative. I guess our point here is that it doesn't require a great deal of imagination and hypothesis to conclude that the statute does have many legitimate applications, even as applied to public officials in public. But it also has, you'd have to concede, many. If the ground you're giving for why they are legitimate has to do with the privacy expectation of the individual, then it must be that one could easily hypothesize a substantial number of illegitimate applications. Because much recording could occur in which no private party would be picked up, or if a private party was picked up, that private party would be speaking in a way in which they would not have an expectation of privacy. Well, and I think I'm glad that you bring up the expectation of privacy, because that's not the yardstick that the legislature chose to use in determining what is permitted and what's not permitted under the statute. The principle that the legislature subscribed to in the government interest that we rest on in our brief is the notion that people have an interest in knowing when they're being recorded so that they can make appropriate choices about how to conduct themselves. It's not a far-fetched interest. As a matter of fact, it's consistent with the law as it stands. To go back to the question I asked you, the statute does not require that the party who is being recorded knows they're being recorded. There's no requirement of that in order for it to be permissible. In other words, open recording counts as open recording even if it's done in a way in which there is no real reason to think that the people being recorded would know they're being recorded. If it's done sufficiently removed, isn't that right? I don't think that's right, Your Honor, just because the way the state law has developed on this, there was a case in the 1970s, Commonwealth v. Jackson, that indicated that it was the knowledge of the person being recorded. The state law then progressed into the Hyde case and the Rivera case in the early 2000s that concluded that having the device in plain view was enough to deem the person being recorded as having knowledge that they're being recorded. Plain view to whom? I'm sorry? Plain view to whom? In other words, if I am at a remove holding up in plain view to others, it's hard to say I'm doing it secretly, but to the people I'm filming who are engaged in, say, the traffic stop, they may have no knowledge that I'm recording them. As I understand it, nothing in the statute requires them to have knowledge in order for me to be able to record as long as some other people could see I was recording. But the way the state law has developed on this, I think it's reasonable to interpret the state law as requiring the recording device to be in the plain view of the person being recorded because that's whose interests and that's whose rights the legislature sought to safeguard and address as a policy matter. And one can imagine many circumstances in which... So you're saying that if John Doe comes along, sees a police officer conversing with a politician, for example, they both have their backs turned to him. He holds out in plain view of everybody a tape recorder and turns it on, or cell phone, turns on the recording function. All right? They have their backs turned, but it's in plain view to anyone who wants to look. Everyone in the Boston Commons sees it except maybe the two people who are talking. And you are saying that is or isn't a violation of the statute? The state law hasn't addressed that scenario specifically, but the state law is clear that it doesn't depend on the actual subjective knowledge. But on your theory of the case, is that a violation of the statute? No, it wouldn't be because the bright line that the state statute draws is between open and surreptitious, that is, plain view and not plain view. So the subjective knowledge of the person being recorded isn't part of that. But then that diminishes the interest that you just asserted fairly dramatically. Yeah. The interest is in really having the ability to know when you're being recorded. Certainly if the police and the politician or any other number of public officials, the sanitation worker, the social worker, the librarian, the teacher, is saying something particularly sensitive and wants to look around and see if they're being recorded, the Massachusetts statute is tailored to ensure that they have the ability to see that. Thank you. Thank you. You reserve three minutes. I will. Thank you. May it please the Court. Good morning, Your Honors. My name is Benjamin Barr, and I, along with my co-counsel, Stephen Klein, represent the appellee cross-appellant Project Veritas Action Fund. In 1822, James Madison warned America that a popular government, without popular information or the means of acquiring it, was a prologue to a farce, a tragedy, or both. Today, nearly 200 years... He was in favor or opposed to surreptitious reporting. He was in favor of... Let's get to this case and skip Madison, shall we? He was in favor of the public gathering of information, which is what this case is about, and Massachusetts makes a mockery of the most effective form of news gathering, undercover journalism, by denying citizens the right to be able to go out into public and to be able to gather information in the most effective way possible, that is, secret audio recording. What do you mean by public? I mean a place, in particular, where there is no reasonable expectation of privacy. It brings me to the truly exceptional nature of Section 99. So just so I get it straight, the idea that everybody in this courtroom right now would have a personal right to record these proceedings? Yes. That's your position? Yes. Do you have a narrower position? Your Honor, I think it's helpful to examine where Section 99 Massachusetts lies in comparison to every other state. Forty-nine other states have done the hard work to balance two sides of the constitutional equation. So there's an interest, certainly as the Supreme Court recognized in Bartnicki v. Vopper, that the state may protect the conversational privacy of individuals. But there's a corresponding right for individuals to be able to gather information out in the public. John Stossel made his living in 2020 reporting to the American people about used car salesmen, bamboozling elderly citizens. Mr. O'Keefe and Project Veritas action funders uncovered a number of political corruption incidents and reported on that. So every state has managed. Eleven of them balance privacy concerns with free speech concerns and allow for recording where no reasonable expectation of privacy exists. That's borne out of U.S. v. Katz in that formulation. And it's a well-settled principle. Florida has a six-factor test that it analyzes. California has statutory safeguards. The 38 other states simply allow for recording to occur in a relatively unregulated manner. But it's Massachusetts that underwent a lazy approach to this. So they didn't balance or give proper weight to the right of citizens, of political activists, of journalists, to be able to acquire information out on the streets. And that's the problem here, because it leads to a law that's prophylactic and clumsy. You just used the phrase, out on the streets. Yes. So that, Garricky and Galeck, both encompass that. Yes. But then some of the examples you give are a person going into a private car dealership. So I'm just trying to get a sense of what do you mean by a public place? What limitations are there on it? Streets is very different than a building, whether government-owned or not, because of the nontraditional public forum limitations on that, et cetera. So I'm just trying to get a sense of what are you asking us to do, both in defending what the district court did insofar as you're appealing the rejection of your other claim? What is it you want? Yes, Sharon. So I don't think public forum analysis is an appropriate fit here. What other states have done to be able to balance the speech and privacy interests is to borrow from the reasonable expectation of privacy standards. So what courts in these other states do is look to factors like what is the location? So that would be a primary starting point. Take a courtroom. Normally we would apply traditional public forums. As long as we have our rules, we do. You can't report the proceedings privately. You would say don't apply traditional public forum. Usually we would say if there's a reasonable basis for the restriction on the activity and it's not viewpoint-based, it's legitimate. What do you want us to do? So we don't have a narrowly focused law like that before, and certainly these laws have been upheld because there is a legitimate compelling governmental interest in being able to secure a privacy hearing. They can also just be upheld because there's a reasonable basis for restricting the activity in the forum. And Massachusetts is free to do that. It's free to safeguard the privacy of its citizens. So last Christmas in Gariki, we said that with respect to the traffic stop on the street, which was not a traditional public forum, we said that it was subject to a reasonable restriction. The reasonable restriction could be imposed by the officer on the spot, or we said it might be imposed by a general statute. And then we dropped a footnote saying we had no occasion to say whether the wiretapping statute there was such a reasonable restriction because everybody had agreed it didn't apply. Why is the wiretapping statute here not a reasonable restriction? Because it does not give any opportunity to engage in this sort of news gathering, as you're allowed to do in every other state. We know from over 20 years of precedent from Massachusetts state's courts, from Commonwealth v. Hyde to Frye to Manzelli, that this law will be applied in every instance. It will be applied in common traffic stops. It will be applied to political protesters on the Boston Common. It will be applied when a victim is assaulted by an assaulter. This law not only will be applied, but attorney fees will be awarded to the assaulter because the victim recorded that. There is no breathing space, no opportunity to be able to record. So it's not a reasonable restriction. It's an outright ban. It's an absurd law, and it's dramatically different from how every other state in the union approaches this. So it gives no opportunity, whether you're a political activist, the ACLU, Project Veritas Action Fund, to be able to engage in this very important newsworthy information. Now, that seems to me that doesn't come head-to-head with the district attorneys and the Commonwealth's main point, or main point as I take it, that the Commonwealth has an interest in protecting the privacy of conversations, that everyone has some sort of right to the privacy of their conversations full stop. Now, you can disagree with that as a matter of policy. We've got to figure out why that's wrong as a matter of constitutional law for you to prevail. Primarily, it amounts to the tailoring, an over-breath issue, Judge Celia. While there is a legitimate governmental interest in protecting conversational privacy, and 11 states have worked out tests to do that, on the other end of the constitutional equation there's a right to be able to acquire information in public and report on that to the American people. So being able to record a bribe occurring with a police officer on that. But Massachusetts is talking not only about governmental privacy, they're talking about the privacy of all participants in these conversations, which typically take place between a government official and a private citizen. Yes, and actually that's, as was noted by Judge Barron earlier, it is entirely capable that government officials and individuals are able to safeguard their own privacy. If they have a confidential conversation or an informant, they're able to meet in a private place. We are now alleging the right to be able to invade doctor's offices or police stations. Yeah, but you are saying that if I think that I've taken precautions, I sometimes might sit on a bench in a park and speak in what I think is pretty confidential tones with someone else, and you're saying that I'm at risk of somebody having a recording device and if I didn't notice it, that can then be sent all over the place, right? I want you to note that even in his hypotheticals, Judge Barron sees himself sitting on a bench. Duly noted, Your Honor. Fortunately, you're not there when I'm on that bench. No, but so if we look to, this is why it's important to realize how much an outlier Massachusetts is. If we look to say, if you did that in Florida, for example, they would look to the nature that, and this follows USVCAS, what steps did the speaker take to safeguard their privacy? So if you're on a bench in a park and you lean over and you whisper in a hushed tone, most other states that manage this sensibly would say that's a private conversation that can't be recorded. Now, if you are allowed... Does the decree that you're saying we should uphold have built into it a limitation for instances in which there was an expectation of privacy? No, I think... So you're saying that we only should uphold the decree insofar as it also has that limitation? I would ask this court facially invalidate section 99. We have 20 years... No, I understand that, but we have a decree. Yes. As you're articulating the argument, you seem to think the decree is overbroad in a certain respect. No, it's not. It's an imperfect response to a broader... Well, with respect to what it covers, are you saying it should have a limitation for circumstances in which the speaker who might be picked up would have an expectation of privacy? I believe that it's unable to give a narrowing interpretation to this which leads to why it should be facially invalidated. And I'll ask my question one more time. Yes. Do you think that, given the argument you've made to us, this decree should be narrowed insofar as it applies to what it applies to? No, I don't. And why not? Why shouldn't there be an exclusion for circumstances in which the party had an expectation of privacy? What is the First Amendment interest in recording even in that circumstance? The First Amendment interest is the same as articulated before, to be able to provide information to the public. The problem is that there's 20 years of precedent that interprets this as an outright ban, and I think that the only sensible way to be able to allow for recordings to send this back to the Massachusetts legislature, allow them to do the hard work that 49 other states have done, and to balance these interests. My time is up, unless you have further questions. Thank you, Your Honor. Good morning, Your Honors. Jessie Rossman on behalf of Mr. Martin and Mr. Perez. Regardless of how this Court resolves the broader claims that Project Veritas and the District Attorney have been speaking about, it should affirm the much narrower relief that Mr. Martin and Mr. Perez are seeking. Mr. Martin and Mr. Perez focus exclusively on police officers, who, unlike other government officials, are armed by the state and have the authority to take people into custody and to, in certain instances, use force against individuals. Recognizing that great power, this Court in Glick held that the First Amendment applied to the recording of police officers performing their duties in public spaces without distinguishing between open and secret recording. So this Court has already held that the First Amendment applies to secret recording. What Glick didn't address, and what is before this Court, is whether the complete prohibition of secret recording of police officers performing their duties in public spaces is a reasonable time, place, and manner restriction on the argument of human rights. Can I ask you a question on that point? Just a puzzlement for me. If the statute were written to permit the recording secretly of police officer interactions but no others, would that make it content-based? I'm sorry. If the statute was written to allow for... To do what you want. In other words, it exempted from its reach recordings of interactions with police officers. Would the statute then be content-based? I think what the statute would be doing in that instance is recognizing what this Court and the Supreme Court has already held, which is that because of their unique role in our society, police officers need to be willing to shoulder substantial burdens as a result of individuals' exercise of their First Amendment right. And as Glick recognized, that includes the right to record. Why isn't your answer to the question that what police officers do  that it could not be regarded as content-based because the non-content-based is so extraordinarily broad? I'm sorry. Content-based in its paradigm form refers to unpopular opinions or specific subjects, but you could not apply that kind of an analysis to the distinction that Judge Barron refers to because police officers do so many things and are called upon to do so many things. That is correct, Your Honor. And I think as a result, what the Court, again, has recognized is that there is that protected First Amendment right to record police officers as a result of that role that they are playing in our society. And to the extent that there are any potential significant government interests, I think what we've already heard here today indicates and supports the argument that Mr. Martin and Mr. Perez are making, which is that the complete prohibition of all secret recording of police officers in public spaces is not narrowly tailored to any such purported government interest. The decree that you won below does not, as I understand, have a carve-out for instances in which the conversation involved a private person who had an expectation of privacy as to the conversation. That's correct, Your Honor. What is the reason why there shouldn't be such a carve-out? Well, I think as we raise in our papers, Your Honor, I think there are some serious questions about whether there is a significant government interest in protecting the voluntary conversations that individuals are having either with or with an earshot of a police officer. But critically, this Court doesn't need to answer that question, because even if there are such interests, this complete prohibition is not narrowly tailored to such instances. And what the Supreme Court's decision— What I'm not seeing is the decree that you've got, though, means that even recording of circumstances in which, say, a victim of a sexual crime goes to the police officer to tell the officer what just happened, that could be secretly recorded and then distributed under this decree. That is correct, Your Honor. And I'm asking you, is there a reason why the decree needs to encompass even that circumstance? Or do you have a problem if the decree were narrowed so that it excluded circumstances in which the person speaking had an expectation of privacy? You may. I'm just trying to figure out what would be the reason, because you could imagine circumstances in which this decree would permit secret recording of circumstances that could be quite concerning, given the privacy interests of the person whose recording was picked up. That's right, Your Honor. To the extent that any narrowing needs to occur with respect to the declaration, I think given that we don't know whether the legislature even contemplated any of those particular circumstances, and that's not a knock against the legislature. The statute was passed before individuals were carrying cell phones and before this Court's Glick decision. But following what the Supreme Court did in McCullen and what this Court did in Rideout and in Cutting, the decision given that this statute is not narrowly tailored to any such potential concerns would be to hold that it is unconstitutional and allow the legislature, in the first instance, to determine if there are any such significant government interests, and if so, then narrowly tailor a statute to any of those concerns. And to the extent that this Court is concerned about what might happen in the interim, it could issue a stay of its holding for a limited period of time to enable the legislature the opportunity to conduct that analysis and, if there are such significant government interests, pass a statute that's more narrowly tailored to those interests. I think that's exactly what... I'm sorry. Are you aware of any wiretapping statute that, if the decree went into place, I understand the idea is now Massachusetts is an outlier relative to other states because of how sweeping the restriction is, but if the decree went into place, would we become an outlier with respect to how effectively naked we were from protection against secret recording? Because I understand that these other statutes still have some protection in place, but they tend to have a confidential communications or privacy expectation limitation on their reach. If the decree goes into place, we would suddenly vault into being the most open to recording of all these jurisdictions. That doesn't mean it's wrong. I'm just trying to get a sense of whether that is, in fact, what would happen. Well, you know where it lays within the spectrum, Anna, is that Massachusetts would not be naked in the First Circuit, wouldn't be laying exposure with respect to police officers, and, again, to the extent that we want to make sure that the legislature has that opportunity to weigh in and perhaps conduct that analysis, a stay could be imposed with a holding to ensure that any additional tailoring that should occur would be done by the legislature in the first instance. The arguments that the district attorney makes in its brief and has made here today are more appropriately directed to the legislature, given the fact that right now this statute is not narrowly tailored. But is it true that some states have no regulation at all on secret recordings? I believe that may be true, Your Honor. I'm sorry, I don't have that directly in front of me. I thought there were a fair number of states. I believe that is accurate, yes. And so the effect of this decree as to what's being excluded from the operation of Section 99 would be to leave Massachusetts, one would imagine, in exactly the same position as those other states where everything is being done case by case in terms of common law rules dealing with privacy interests and the like. That is correct, Your Honor. Okay. Are there any further questions? Thank you. Your Honors, I think there are three points that I would like to make in rebuttal. The first is to address Judge Sellea's comment earlier that he understands the Commonwealth's interest as everybody having a right to privacy in their own conversation. I'd just like to be clear that it's a little finer point on it than that. It's not privacy in the sense that you aren't allowed to listen to me because that's plainly not what Section 99 does. It's rather privacy in the specific sense that if you're going to listen to me or to record me, I ought to be able to know that you're doing it so that I can make choices appropriately about what I say and what I do. I also wanted to secondly address, Judge Barron, you had mentioned some hypotheticals about this courtroom and some other public spaces and maybe public forums. What we would direct the Court's attention to on that is the breadth of spaces that constitute public fora and the breadth of things that a government official might be called upon to do in those spaces. We've talked a lot about police officers, but it also includes, say, a teacher speaking to a parent waiting outside of the school bus. You see, the traditional way we would analyze that under a nontraditional public forum analysis, if that was the right thing to do, was you look at whether the restriction is reasonable to the forum, the needs of the forum. And that's usually a tailored consideration as to the forum. But there's just no indication the legislature here did any kind of analysis like that because it wasn't even contemplating the recording of government officials. I mean, it's just not in the can of the analysis that was being done. So it sort of defies the ability to us then review, is this restriction appropriate to the forum at issue? Because there was no consideration of whether it was. Instead, it was based on a different theory as to why the restriction was proper. What the legislature did here was pass down a rule of general applicability. It's not content. It doesn't make distinctions based on content. It doesn't make distinctions based on place. That's right. And I think the question before this court is whether, if it reaches the merits, as a general broad matter, was the legislature outside of its rights to hang the hat of Massachusetts public policy on this notion that people ought to know when they're being recorded. The third point I want to make briefly is that Massachusetts is not alone in this. We cite now a brief in Oregon statute, particularly a subsection of the Oregon statute that applies the exact same rule of law to interactions with police officers and interactions with public meetings. That is, no consent is required from the parties to that conversation, but you have to be holding it out in the open. The yardstick that Massachusetts chose as a matter of policy is surreptitiousness, not reasonable expectation of privacy, and that was consistent with the First Amendment values on both sides of the equation as described in our brief. Thank you. Thank you.